**FILED**
**CLERK**

3:21 pm, Nov 15, 2019

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FRANKLIN MCPHERSON,

                              Petitioner,                    **MEMORANDUM & ORDER**
                                                             15-CV-1250 (SJF)
               v.

WILLIAM KEYSER, Jr., Superintendent, Sullivan
Correctional Facility,

                              Respondent.
----------------------------------------------------------------X
FEUERSTEIN, District Judge:

        Franklin McPherson ("McPherson" or "Petitioner") petitions the Court for a writ of

habeas corpus pursuant to 28 U.S.C. §2254, challenging his 2008 conviction in New York

Supreme Court, Nassau County, whereby he was found guilty of, *inter alia,* (1) murder in the

second degree ("depraved indifference murder") in violation of N.Y. PENAL LAW §225.25(2);

(2) vehicular manslaughter in the first degree in violation of N.Y. PENAL LAW §225.13(1);

(3) criminal possession of a controlled substance in the seventh degree in violation of N.Y.

PENAL LAW §220.03; and (4) criminal possession of a weapon in the second degree in violation

of N.Y. PENAL LAW §265.03(1)(b).[1]  For the reasons set forth below, the petition is denied.

## I.  BACKGROUND

### A. Factual Background[2]

        Shortly after 12:00 a.m. on October 19, 2007, McPherson and his cousin, Roman Taylor,

traveled in McPherson's Lexus to a nightclub in Hempstead, New York.  Tr. 838, 847.

---

[1] He was also found guilty of aggravated driving while intoxicated and operating a motor vehicle while under the influence of alcohol in violation of sections 1192(2)(a) and 1192(2)(3), respectively, of New York Vehicle and Traffic Law.

[2] The facts are taken from the transcripts ("Tr.") of the trial proceedings in state court in June 2008.

McPherson's girlfriend, Crystal Green,[3] and a friend of Green's, Delroy McCalla drove to the club separately in McCalla's car. The group left the club at approximately 3:15 a.m. McCalla testified that at the time, Taylor was "really drunk," *id.* at 851, but McPherson did not appear intoxicated. *Id.* at 852-53.

Once outside, they walked to a fence by the parking lot and Taylor sat down on the ground, at which point, McPherson became upset, repeating that he had lost something and went to look in the area behind his car before returning to the fence. Tr. 857. As Taylor was unable to walk without assistance, McPherson, McCalla, and Green helped him to McPherson's car and put him in the backseat to lie down. *Id.* at 870-74. Green and McPherson were arguing, and McCalla got into his car. *Id.* McPherson searched through the trunk of his car, then went to the passenger side. *Id.* at 867. Soon thereafter, witnesses, including McCalla, heard gunshots. There was no direct testimony about who actually fired a gun. Taylor had remained in the backseat of McPherson's car throughout the arguments and gunfire. *Id.* at 880. McCalla left with Green in his car after the shots were fired. Upon investigating calls about shots fired, the police found five 9-millimeter shell casings in the parking lot. *Id.* at 884-88.

At approximately 3:30 a.m., McPherson's car was seen driving the wrong way, west in the eastbound lanes, of the Southern State Parkway at speeds of about 70 to 75 miles per hour. Tr. 1067-69. Witnesses testified that cars were veering to avoid McPherson's car, but that McPherson moved steadily without braking or trying to avoid the other vehicles. *Id.* at 1038-43, 1269-70. A construction worker saw McPherson driving directly toward him and blew the air horn on his Mack truck for three or four seconds. *Id.* at 1075. McPherson's car passed by without slowing down or changing lanes. *Id.* at 1074-75, 1083. McPherson traveled in the

---

[3] The spelling of this individual's name varies within the materials between "Green" and "Greene." The Court will use the spelling "Green" as it appears in the trial transcript.

wrong direction for about five miles, passing eight "wrong way" signs and the backs of 21 signs that appeared to be dark gray with no writing since the words were only visible if one were driving eastbound in the correct direction. *Id.* at 988-94.

Near exit 13, McPherson, without slowing down, collided head-on with a Jeep, killing its driver, Leslie Burgess, instantly, and incinerating the Jeep. Defendant was arrested and his blood alcohol content ("BAC") from a sample taken at 4:49 a.m. was measured at 0.19%. Tr. 544, 547, 700-01. During an inventory search of McPherson's car, the police found multiple rounds of 9-millimeter ammunition in the trunk, an unloaded 9-millimeter handgun in the front of the car, and a plastic bag containing cocaine, also in the car. *Id.* at 556-61, 589-90, 618, 903-04. The handgun recovered from the car matched the shell casings found in the parking lot near the nightclub. *Id.* at 947.

## B. Procedural Historye4c

### 1. Trial and Sentencing

After a jury trial, McPherson was found guilty of multiple charges including depraved indifference murder and criminal possession of a weapon in the second degree. He was sentenced to concurrent sentences, the longest of which was twenty-five (25) years to life imprisonment on the depraved indifference murder charge.

### 2. Direct Appeal

Petitioner filed a Notice of Appeal of his conviction, raising, *inter alia[4],* the following issues: (1) ineffective assistance of counsel; and (2) that the evidence was legally insufficient as to (a) depraved indifference murder, and (b) criminal possession of a weapon. The Appellate

---

[4] In his direct appeal to the Appellate Division, McPherson also raised issues regarding suppression of evidence from the search of his vehicle, the weight of the evidence, and the sentence imposed. Those issues were not raised on subsequent appeal or in the current petition.

Division affirmed the judgment of conviction in a decision dated November 1, 2011, finding that McPherson's contention that the evidence was legally insufficient to support his conviction of murder in the second degree and criminal possession in the second degree was "unpreserved for appellate review." *People v. McPherson,* 89 A.D.3d 752, 754, 932 N.Y.S.2d 85 (2d Dep't 2011). That court went on to find that "[i]n any event, viewing the evidence in the light most favorable to the prosecution . . . we find that it was legally sufficient to establish [McPherson's] guilt of those crimes beyond a reasonable doubt." *Id.* (citations omitted). As to the claim of ineffective assistance of counsel, the Appellate Division found, without discussion, that "defendant was not deprived of the effective assistance of counsel as defense counsel provided meaningful representation." *Id.* at 758-59.

Petitioner further appealed to the Court of Appeals, again raising the arguments regarding the legal sufficiency of the evidence and ineffectiveness of trial counsel. The Court of Appeals acknowledged that the Appellate Division had found that McPherson's legal sufficiency arguments were "unpreserved for review and, in any event, without merit," *People v. Heidgen,*[5] 22 N.Y.3d 259, 274, 3 N.E.3d 657, 980 N.Y.S.2d 320 (2013), and did not further discuss those issues in the context of whether there was legally sufficient evidence to support his conviction. The Court did, however, discuss the evidence on the depraved indifference murder charge in the context of McPherson's ineffective assistance of counsel claim. It noted that, in discussing formulation of the jury charge, the trial judge specifically discussed the case of *People v. Feingold,* 7 N.Y.3d 288, 852 N.E.2d 1163, 819 N.Y.S.2d 691 (2006)*,* which "conclusively established depraved indifference as a culpable mental state," *Heigden,* 22 N.Y.3d at 278, and in

---

[5] The decision resolving McPherson's appeal also addressed appeals brought by two other defendants, Martin Heidgen and Taliyah Taylor. All three defendants were convicted of depraved indifference murder arising from separate, unrelated incidents.

particular questioned whether the holding "applied if the defendant had been oblivious to his surroundings." *Id.* The Court found that under these circumstances, defense counsel "should have moved to dismiss the charge of depraved indifference murder." *Id.* The Court went on, however, to determine that such a motion "would not have been successful," *id.* at 279, in light of the "ample evidence supporting the conclusion that defendant was aware that he was driving on the wrong side of the road and continued to do so with complete disregard for the lives of others." *Id.* Therefore, the Court of Appeals concluded, McPherson was not prejudiced and "otherwise received meaningful representation." *Id.* The Court also found that "[s]ince there was no reasonable probability that the result would have been different, defendant's claim also fails under the federal standard." *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 274 (1984)). The Court of Appeals considered McPherson's remaining arguments and found them "to be without merit." *Heigden,* 22 N.Y.3d at 280.

McPherson's petition for certiorari filed with the United States Supreme Court was denied on December 15, 2014. *McPherson v. New York,* 135 S. Ct. 873, 190 L. Ed. 2d 708 (2014). He has not filed a motion for relief under section 440.10 of the New York Criminal Procedure Law.

### 3. Habeas Petition

McPherson's habeas petition[6] challenges his conviction on the following grounds: (1) the trial evidence was legally insufficient to support the second degree murder conviction where the proof demonstrated he was too intoxicated to form the requisite intent for depraved indifference murder; (2) trial counsel was ineffective in (a) failing to move to dismiss the depraved indifference murder count on the ground that McPherson was too intoxicated to form

---

[6] At the time of filing the petition, McPherson appeared *pro se.* He subsequently retained counsel, however, and that attorney filed a reply memorandum on his behalf.

the requisite intent, and (b) pursuing an invalid defense based on the misidentification of the victim; and (3) the evidence was insufficient to establish possession of a loaded firearm as the gun was unloaded when recovered by the police. Respondent argues Petitioner's first and third claims regarding the legal sufficiency of evidence are procedurally barred from review and that the state court's decision that Petitioner received effective assistance of counsel at trial was not contrary to, and did not involve an unreasonable application of, clearly established federal law.

## II.  LEGAL STANDARDS

### A.  Standard of Review

"It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002). Pursuant to 28 U.S.C. §2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, a habeas court considering a claim that was decided on the merits in a state court proceeding may grant relief only if the state court's decision was "(1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §2254(d). A state court decision is considered "contrary to" federal law if it either "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor,* 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). " 'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296

(2d Cir. 2005) (alteration in original) (quoting *Williams,* 529 U.S. at 412). An "unreasonable application" of federal law occurs where the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams,* 529 U.S. at 407-08. These requirements are strictly construed and by design "erect[] a formidable barrier to federal habeas relief," *Burt v. Titlow,* 571 U.S. 12, 19, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013), founded upon the principle that "[s]tate courts are adequate forums for the vindication of federal rights" and are "presumptively competent[] to adjudicate claims arising under the laws of the United States." *Id.* (internal quotation marks and citation omitted).

A habeas petition will not be reviewed by the district court unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. §2254(b)(1)(A). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation marks and citation omitted; alteration in original). Merely passing through the state courts is not sufficient. The state courts must have had "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding" for there to have been exhaustion of state remedies, and therefore a state prisoner must "present the state courts with the same claim he urges upon the federal courts." *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971); *see also Jones v. Keane*, 329 F.3d 290, 294–95 (2d Cir. 2003) ("A petitioner has fairly presented his claim only if he has informed the state court of both the factual and the legal premises of the claim he asserts in federal court." (internal quotation marks and citation omitted)).

**B. Procedural Bar**

A federal court "may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis,* -- U.S. --, 137 S. Ct. 2058, 2064, 198 L. Ed. 2d 603 (2017); *see also Jimenez v. Walker*, 458 F.3d 130, 136 (2d Cir. 2006) ("federal courts may not review the judgment of a state court that 'rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the court's decision'" (quoting *Harris v. Reed*, 489 U.S. 255, 260, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989))). This principle serves to "ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 566 U.S. 1, 9, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012). "The bar applies 'even where the state court has also ruled in the alternative on the merits of the federal claim.'" *Nowakowski v. New York,* 13 CV 3709, 2018 WL 6421056, at *6 (E.D.N.Y. Dec. 6, 2018) (quoting *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir. 1990)).

Notwithstanding the existence of a procedural bar to a claim under state rules, "a federal court may still review the claim on the merits [1] if the petitioner can demonstrate both cause for the default and resulting prejudice, or [2] if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice." *Petronio v. Walsh*, 736 F. Supp. 2d 640, 654 (E.D.N.Y. 2010) (citing *Coleman v. Thompson*, 501 U.S. 722, 749–50, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). As to the cause and resulting prejudice avenue, "[c]ause may be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel, ... or that 'some interference by state officials' made compliance impracticable, ... [or that] the procedural default is the result of ineffective assistance of

counsel." *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986) (citations omitted)). To the extent that ineffective assistance of counsel may, in some circumstances, constitute cause for a default, "the ineffective assistance claim must itself have been exhausted in the state court." *Pitre v. Griffin,* 16 Civ. 6258, 2016 WL 7442653, at *11 (E.D.N.Y. Dec. 26, 2016).

"The miscarriage of justice exception is concerned with actual as compared to legal innocence." *Calderon v. Thompson,* 523 U.S. 538, 559, 118 S. Ct. 1489, 140 L. Ed. 2d 728 (1998) (citation omitted). Throughout his petition and supporting submissions, Petitioner makes no claim of actual innocence, nor does the record support any such argument. Accordingly, any further discussion in this decision regarding whether Petitioner has overcome a procedural bar will be limited to the cause and resulting prejudice exception.

## III. DISCUSSION

### A. Legal Sufficiency of the Evidence

A legal insufficiency claim rests upon due process principles established by the Fourteenth Amendment. *See e.g., Soberanis v. Brown*, No. 10-CV-2695, 2014 WL 5038364, at *8 (S.D.N.Y. Sept. 30, 2014) ("The due process guaranteed by the Fourteenth Amendment provides that no person shall be convicted of a crime except upon sufficient proof"). A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden," *Ponnapula,* 297 F.3d at 179, and is only entitled to relief if, "based upon the evidence adduced at trial, no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Glover v. Portuondo*, No. 96 CIV. 7616, 1999 WL 349936, at *7 (S.D.N.Y. May 28, 1999). Such a challenge "does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Jackson v. Virginia,* 443

U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis in original) (quoting *Woodby v. Immigration & Naturalization Serv.,* 385 U.S. 276, 282, 87 S. Ct. 483, 17 L. Ed. 2d 362 (1966)). Rather, the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

Petitioner's first and third grounds for relief concern the legal sufficiency of the evidence supporting his conviction of depraved indifference murder and criminal possession of a weapon in the second degree, respectively. Both these claims are procedurally barred as the Appellate Division expressly rejected them as unpreserved for appellate review, citing §470.05(2) of New York's Criminal Procedure Law, the state's "contemporary objection rule." Generally, the rule provides that "New York appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings." *Downs v. Lape*, 657 F.3d 97, 103 (2d Cir. 2011); *see also People v. Hawkins,* 11 N.Y.3d 484, 492, 900 N.E.2d 946, 872 N.Y.S.2d 395 (2008) ("To preserve for this Court's review a challenge to the legal sufficiency of a conviction, a defendant must move for a trial order of dismissal, and the argument must be 'specifically directed' at the error being urged. . . general motions simply do not create questions of law for this Court's review" (citations omitted)). The contemporaneous objection rule in New York "is considered a firmly established and regularly followed rule sufficient to invoke the 'independent and adequate state law ground' bar" to federal habeas review. *Nowakowski,* 2018 WL 6421056, at *6 (quoting *Richardson v. Greene,* 497 F.3d 212, 217-18 (2d Cir. 2007)).

The Appellate Division expressly found that the legal sufficiency arguments pertaining to both the depraved indifference murder and criminal possession of a weapon counts were unpreserved for review, a fact acknowledged by Petitioner himself. *See* Brief to Appellate Division for Defendant-Appellant at 38, 42 (defendant "recognizes" that legal sufficiency arguments were not properly preserved at trial); Brief to Court of Appeals for Defendant-Appellant at 67 ("Defendant acknowledges that neither sufficiency issue was preserved by his trial counsel"). The Court of Appeals also did not address the legal sufficiency claims, noting that those claims were found to be unpreserved by the Appellate Division.[7] *See Heidgen,* 22 N.Y.3d at 274. The Appellate Division's decision rested on an independent and adequate state ground, the contemporaneous objection requirement, resulting in a procedural bar to federal habeas review.

The mere fact that the Appellate Division engaged in an "in any event" discussion of the unpreserved claims does not overcome the bar as "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez,* 898 F.2d at 9; *see also Harris,* 489 U.S. at 264 n.10 (noting that "[a] state court need not fear reaching the merits of a federal claim in an *alternative* holding" (emphasis in original)); *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996) (Appellate Division's discussion of the merits of a claim under its discretionary "interest of justice" power does not operate as a waiver of the procedural bar to federal habeas review); *Nowakowski,* 2018 WL 6421056, at *11 ("the fact that the Appellate Term rejected the claim on the merits, in the alternative, does not lift

---

[7] In contrast, the Court of Appeals expressly considered whether there was legally sufficient evidence to support both Heidgen's and Taylor's convictions for depraved indifference murder. *See Heidgen,* 22 N.Y.3d at 277-278.

this important procedural bar").  Accordingly, Petitioner's two claims based on legal insufficiency of the evidence are procedurally barred unless he can establish both cause for the default and resulting prejudice.

    1. Depraved Indifference Murder Count

Petitioner does not address the exceptions to a procedural bar directly as to the legal sufficiency claims, but rather argues that those claims are not procedurally barred since they must be examined in the context of the ineffective assistance claim.  Although the latter claim will require some consideration of the legal sufficiency, it is a separate claim.   There is some overlap, however, since a finding of ineffective assistance of counsel may well constitute "cause" for the failure to preserve the claim at trial.  Indeed, the Court of Appeals found that trial counsel "should have moved to dismiss the charge of depraved indifference murder." *Heigden,* 22 N.Y.3d at 278.

Assuming that trial counsel's failure to move for a dismissal establishes cause for the failure to preserve his objection, Petitioner must still demonstrate resulting prejudice.  As will be discussed further below, *see infra,* Section III (B), he cannot do so as his ineffective assistance of counsel claim ultimately fails.  *See, e.g., McDowell v. Heath*, No. 09 CIV. 7887, 2013 WL 2896992, at *25 (S.D.N.Y. June 13, 2013) ("Petitioner also cannot establish actual prejudice because this ineffective-assistance claim has no merit").  Absent a showing of prejudice, Petitioner cannot overcome the procedural bar and thus his legal sufficiency claim regarding the depraved indifference murder conviction may not be considered by this Court.

    2.  Possession of a Loaded Weapon Count

"A person is guilty of criminal possession of a weapon in the second degree when: (1) with intent to use the same unlawfully against another, such person. . . (b) possesses a loaded

firearm. . . ." N.Y. PENAL LAW §265.03(1)(b).  Petitioner argues that his conviction was legally insufficient because the gun was unloaded when it was recovered from this vehicle after the crash.  As the state court found this claim to be unpreserved, it too is procedurally barred and may only be considered on the merits upon a demonstration of cause for the default and resulting prejudice.

Petitioner offers no cause for this default.  Any argument that trial counsel's failure to move to dismiss this claim constitutes ineffective assistance of counsel is unavailing given that he did not raise this alleged omission as grounds for his ineffective assistance of counsel claim on direct appeal.  Thus, any such argument was not exhausted and cannot be used to show cause to overcome a procedural bar.  *See Pitre,* 2016 WL 7442653, at *11.

Additionally, even assuming *arguendo,* that he could demonstrate cause for the failure to preserve the issue, Petitioner cannot establish prejudice.  The testimony is uncontroverted that shots were fired in the nightclub parking lot and that those shots came from the gun recovered from Petitioner's vehicle.  While there was no direct evidence that Petitioner fired the gun, there is ample circumstantial evidence to support the jury's determination that he did so.  There is testimony that he was rummaging through the trunk of the car where the ammunition was located and that he then went to the passenger side of the car, near where the gun was ultimately discovered.  Petitioner has not pointed to any actual evidence that someone else could have fired the gun, offering only conjecture that perhaps Green did it, or even Taylor, despite the testimony that the latter was incapacitated in the back seat of the car during the entire relevant time. "[W]here a petitioner's claim lacks merit, he cannot demonstrate that his procedural default of the claim has resulted in prejudice sufficient to overcome the procedural bar.*"  Hamilton v. Superintendent, E. New York Corr. Facility,* No. 11CV1332, 2015 WL 13306815, at *14

13

(S.D.N.Y. Sept. 10, 2015), *adopted by* 2017 WL 1944114 (S.D.N.Y. May 9, 2017). In the absence of a demonstration of prejudice, the procedural bar remains and habeas review of the claim is precluded.

## B. Ineffective Assistance of Counsel

To establish that he was denied the right to effective assistance of counsel as guaranteed by the Sixth Amendment, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness," *Strickland,* 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. As to the deficiency prong, the inquiry "must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. The "court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct" and must "determine whether the [challenged acts or omissions] were outside the wide range of professionally competent assistance." *Id.* at 690.

Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690. Even if a petitioner overcomes this presumption, he must still prove prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.,* and it "requires a substantial, not just conceivable likelihood of a different result." *Cullen v. Pinholster,* 563 U.S.170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (internal quotation marks and citation omitted).

Moreover, in the context of a review under § 2254(d)(1), "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 698–99, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). Rather, the petitioner must show "that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* Since "[t]he standards created by *Strickland* and §2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011); *see also Cullen,* 563 U.S. at 190 ("review of [state court]'s decision is ... doubly deferential [because] [w]e take a highly deferential look at counsel's performance [under *Strickland*] through the deferential lens of § 2254(d)" (internal quotation marks and citations omitted)); *Acevedo v. Capra*, No. 13 Civ. 5579, 2014 WL 1236763, at *13 (E.D.N.Y. Mar. 25, 2014) ("To prevail, petitioner must show not only that counsel's performance fell below the *Strickland* standard of reasonableness, but also that the state court's application of the *Strickland* standard was itself unreasonable and not merely incorrect."). Accordingly, "[w]hen §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington,* 562 U.S. at 105.

Petitioner identifies two errors made by his trial counsel that he claims violated his right to effective assistance of counsel: (1) counsel failed to move to dismiss the depraved indifference count on the ground that Petitioner was too intoxicated to form the requisite *mens rea* element, Reply Mem. at 5; and (2) counsel pursued an "invalid defense based on the misidentification of the victim." *Id.* at 6. Petitioner bears the burden demonstrating that it was necessarily unreasonable for the New York courts to conclude that trial counsel's performance was not

deficient. *See Cullen,* 563 U.S. at 190. "With respect to each branch of petitioner's ineffective assistance of counsel claim, the question for this habeas Court is whether anything in the record or the extensive briefing suggests a basis for declining to afford the state court decision the doubled degree of deference the Supreme Court requires." *Whitlock v. LaValley*, No. 13 CV 5772, 2019 WL 3754415, at *17 (E.D.N.Y. Aug. 8, 2019).

    1.  <u>Failure to Move to Dismiss Depraved Indifference Murder Count</u>

    Under New York law, depraved indifference murder occurs when "[u]nder circumstances evincing a depraved indifference to human life, [the defendant] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. PENAL LAW § 125.25(2). The prosecution must establish beyond a reasonable doubt that: (1) a defendant caused the death of another; (2) by recklessly engaging in conduct that created a grave risk of death, (3) under circumstances evincing a *mens rea* of depraved indifference. *Feingold*, 7 N.Y.3d at 294. The holding in *Feingold* that "depraved indifference to human life is a culpable mental state," *id.,* overruled prior case law in New York holding that depraved indifference did not "function as a *mens rea* element, but to objectively define the circumstances which must exist to elevate a homicide from manslaughter to murder." *People v. Register*, 60 N.Y.2d 270, 278, 457 N.E.2d 704, 469 N.Y.S.2d 599 (1983); *see also Wells v. Perez,* No. 10 CIV. 1107, 2011 WL 1453925, at *2 (S.D.N.Y. Apr. 14, 2011) (under *Register,* "'depraved indifference referred to objective circumstances surrounding the offenses committed,' and these "objective circumstances,' not *mens rea*, are what distinguished depraved indifference murder from manslaughter" (quoting *Mannix v. Phillips,* 619 F.3d 187, 198 (2d Cir. 2010))). Petitioner's argument is that his level of intoxication was such that he was incapable of forming the requisite *mens rea,* therefore his conviction of depraved indifference murder was not

supported by the evidence, and his trial counsel's failure to move on this basis deprived him of effective assistance of counsel. This issue was raised before the Court of Appeals and expressly rejected.

The Court of Appeals agreed that trial counsel should have moved to dismiss the depraved indifference murder count because while not a "clear winner," counsel "could not have determined that the argument was so weak as to be not worth raising." *Heidgen,* 22 N.Y.3d at 279 (internal quotation marks and citation omitted). Nevertheless, the Court found that Petitioner's argument failed because "a motion to dismiss would not have been successful." *Id.* The Court summarized the evidence in support of Petitioner's conviction as follows:

> The People established that defendant became enraged after losing something and fired off several gunshots. He then drove at excessive speed, in the wrong direction on the parkway for about five miles. During that time—more than four minutes—defendant did not appear to apply his brakes and several oncoming cars swerved to avoid him. He also passed numerous signs that should have alerted him that he was traveling in the wrong direction. In addition, he did not slow down or pull over in response to a truck driver sounding his air horn. There was, under the circumstances, ample evidence supporting the conclusion that defendant was aware that he was driving on the wrong side of the road and continued to do so with complete disregard for the lives of others. Therefore, although the motion to dismiss should have been made, we are persuaded that defendant was not prejudiced and otherwise received meaningful representation.

*Id.* Based on this evidence, the Court stated that "we are persuaded that defendant was not prejudiced and otherwise received meaningful representation," and further found that "[s]ince there was no reasonable probability that the result would have been different, defendant's claim also fails under the federal standard." *Id.* (citing *Strickland*).

The Court of Appeals noted that the "most difficult aspect" of the cases before it was "whether there was sufficient evidence that the defendants were aware or and appreciated the

risks caused by their behavior." *Heigden,* 22 N.Y.3d at 279.  The issue of each defendant's *mens rea* was presented to the juries of the three cases and each jury "rejected the conclusion that the defendant was too intoxicated to form the requisite intent." *Id.*  Examining those verdicts, the Court of Appeals concluded that "a rational jury could have found that the defendant, emboldened by alcohol . . . appreciated that he . . . was engaging in conduct that presented a grave risk of death and totally disregarded that risk, with catastrophic consequences." *Id.*  Upon review of the record, this determination was not objectively unreasonable.

Petitioner puts substantial weight upon his BAC after the accident, 0.19%, and an expert's testimony regarding the effect of such a level on an individual's ability to form a culpable mental state.  "[A] defendant's statutory intoxication is not dispositive on the issue of whether a defendant was capable of forming the requisite mens rea." *McPherson,* 89 A.D.3d at 756.  Instead, a defendant's BAC is only one piece of evidence to be considered by the trier of fact. *See Wells,* 2011 WL 1453925, at *15 (while evidence of BAC of 0.25 to 0.27% "could be used to find that [petitioner] did not have a *mens rea* of depraved indifference," a "reasonable fact finder could find that the remaining evidence was sufficient to support" a depraved indifference murder conviction).

The state court did not unreasonably apply *Strickland* when it concluded that a motion to dismiss the depraved indifference charge would have been unsuccessful and that counsel's failure to make such a motion did not prejudice Petitioner.  This Court finds nothing in the record or the briefing that suggests a basis for declining to afford the state court decision the doubled degree of deference required by Supreme Court precedent.

    2.  <u>Pursuit of Defense Based on Victim Identification</u>

Petitioner contends that trial counsel's attempt to argue that the prosecution was required to prove the identity of the victim was contrary to law and unsupported and thus constituted ineffective assistance of counsel. This argument was raised on appeal and denied without discussion.

Trial counsel attempted to take advantage of language in the indictment stating that McPherson was charged specifically with the murder of Leslie Burgess and on that basis, moved to dismiss for failure to prove the identity of the badly burned victim beyond a reasonable doubt. Although the trial court denied that motion, the judge advised counsel "I think if you wish to argue it, you can." Tr. 1326-27. It was only after summations that the court advised that it would give a specific instruction that the prosecution need not prove the victim's identity. Trial counsel's apparent reliance upon the trial judge's hesitancy over the course of these discussions, while ultimately misplaced, cannot be said to be completely baseless under the circumstances.

Even assuming without deciding that trial counsel's strategy was unsound, Petitioner fails to establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. When assessing prejudice, habeas courts "must consider the totality of the evidence before the judge or jury." *Berghuis v. Thompkins*, 560 U.S. 370, 389, 130 S. Ct. 2250, 176 L. Ed. 2d 1098 (2010) (quoting *Strickland*, 466 U.S. at 695). Whatever trial counsel's intentions may have been, Petitioner is unable to show that the outcome of the trial would have been different if he had not pursued the misidentification strategy. Significantly, Petitioner does not suggest that had trial counsel not pursued this strategy, he would have been acquitted on a count or counts. He does not clearly enunciate the nature of the prejudice he suffered as the result of this strategy, stating only that (1) counsel "offended the jury," Reply Brief at 5, and (2) the summation "amounted to

little more than a confession of guilt." *Id.* at 6.  Neither argument provides a basis to attack the convictions obtained against Petitioner.

Based on a review of the record, the Court finds no reasonable probability that the outcome would have been any different if counsel had not attempted this strategy.  Accordingly, it was not unreasonable for the state court to apply *Strickland* and find no ineffective assistance of counsel claim arising from this conduct, a finding this Court gives the deference to which it is entitled.

## C.  Newly Identified Issues

Finally, the Court notes that Petitioner, in his reply memorandum, has referenced two additional issues not raised in his petition.  The first such issue is that the trial court's jury charge on depraved indifference murder was erroneous.   The second issue is that he was harmed as the result of a "severe *Brady*[8] violation" resulting from the state's failure to turn over a written statement from Anthony Paul D'Cruz ("D'Cruz"), a prosecution witness.  D'Cruz, who was working on a paving crew the night of the collision, testified about his observations of Petitioner's driving on the Parkway preceding the accident.  *See* Tr. at 1139 *et seq.*  On cross examination, defense counsel attempted to elicit testimony suggesting that D'Cruz's trial testimony was inconsistent in some respects with a statement he had given to an investigator in the days immediately after the incident.  On redirect, the prosecution offered D'Cruz his actual statement to refresh his recollection.  Defense counsel then asked for a sidebar, at which point he

---

[8] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).  "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999).  As the purported claim is procedurally barred, the Court does not examine whether failure to produce the D'Cruz statement would run afoul of *Brady.*

argued that D'Cruz's statement had never been produced to him. Defense counsel noted some differences between the trial testimony and the statement language and further noted that in the statement, D'Cruz said he had observed a black male passenger wearing either a do-rag or a white t-shirt was sitting in the passenger seat. *Id.* at 1178. The prosecution assured counsel and the court that the omission was unintentional and defense counsel stated he was not "in any way inferring there's prosecutorial misconduct." *Id.* at 1180. Defense counsel made an application to preclude D'Cruz's testimony in its entirety, which the Court granted over the prosecution's objection and suggestion that a curative instruction would suffice. On his appeal, Petitioner raised no claim relating to this portion of the trial, nor did he raise it in his petition here. For the first time in his reply, Petitioner suggests that the failure to produce the statement constitutes a *Brady* violation and further that "[t]he trial court's decision to strike that witness' testimony in order to remedy the prosecution's violation exacerbated the harm to the defense." Reply Brief at 23.

Assuming that he is attempting to assert new claims, the Court considers whether any such claim has been exhausted. A federal court may not grant a habeas petition "unless it appears that the applicant has exhausted the remedies available in the courts of the State; or that there is either an absence of available State corrective process; or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b)(1). However, "when 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (quoting *Coleman* 501 U.S. at 735 n.1); *see also id.* (noting that when a claim has not been presented to the state

court and it is clear that the claim is procedurally barred from consideration by the state court by operation of state law, "a federal court may theoretically find that there is an 'absence of available State corrective process'" and thus "deem the claim exhausted."); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir.1991) ("For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.' " (quoting *Harris*, 489 U.S. at 263 n. 9). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)," *Grey*, 933 F.2d at 120, and therefore the procedurally barred claim may be deemed to be exhausted by the habeas court. In other words, "[i]f a petitioner has no available state forum in which to pursue a remedy because of a state procedural bar, his claim may be deemed exhausted, yet procedurally barred." *Ricco v. Burge*, No. 06 CIV. 4902, 2009 WL 4341521, at *15 (S.D.N.Y. Dec. 2, 2009). Any procedurally defaulted claim would then be dismissed on the merits unless petitioner can demonstrate cause and prejudice for the default or that failure to consider it would result in a miscarriage of justice. *Id.*

Petitioner failed to raise these claims on direct appeal, and he is precluded from "further consideration in the New York courts because [he] has already made the one request for leave to appeal to which he is entitled." *Bossett*, 41 F.3d at 829; *see also Aparicio,* 269 F.3d at 91 (noting that petitioner "was entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals"). Nor is collateral review available to him as he could have raised the issues on direct appeal. *See* N.Y. Crim. Proc. Law §440.10 (2)(c) (stating that a court must deny a motion to vacate where "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate

review or determination occurred owing to the defendant's . . . unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him"); *Aparicio,* 269 F.3d at 91 ("New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal").[9] As the claims are procedurally barred from further review in state court, they are similarly precluded from review by this Court unless Petitioner can demonstrate cause for his failure to raise the issues and resulting prejudice.

As to the claim regarding the purportedly erroneous jury instruction, Petitioner does not assert any cause for his failure to raise the issue on direct appeal, but merely notes in a footnote that defense counsel failed to object to the instruction given by the trial court. *See* Reply Brief at 19, n.3. To extent Petitioner is suggesting that trial counsel's failure to object constituted ineffective assistance of counsel, he failed to raise this specific instance of such conduct in his direct appeal. Accordingly, he "cannot rely on ineffective assistance of counsel to avoid the procedural bar." *Nelson v. Perez*, No. 14-CV-7015, 2018 WL 1155992, at *2 (E.D.N.Y. Mar. 2, 2018) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451-52, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000)). As to the record-based *Brady* claim, he has provided no argument whatsoever regarding cause for his failure to raise the claim on direct appeal. As Petitioner has failed to demonstrate any cause for his failure to raise these issues on appeal, the procedural bar remains, and habeas review is precluded.

---

[9] Regarding a *Brady* claim, where, as here, sufficient facts appear on the record of the proceedings to permit appeal of any such issue, direct appeal is the appropriate avenue for review. *See generally People v. Dearstyne*, 230 A.D.2d 953, 1005 (3d Dep't 1996) (on direct appeal, finding no violation "because the claimed *Brady* material was not exculpatory"). Collateral attack is available only to the extent the alleged violation occurred outside the trial proceedings. *See, e.g., Blalock v. Smith*, No. 08 CIV. 7528, 2012 WL 3283439, at *6 (S.D.N.Y. Aug. 13, 2012) (noting that a collateral attack based on a *Brady* violation may be appropriate "because it is an inherently off-the-record claim that only comes to light after the trial phase is over and a conviction has been entered").

**IV.  CONCLUSION**

For all the foregoing reasons, the petition for a writ of habeas corpus is denied and the proceeding is dismissed in its entirety.  As Petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability will issue. *See* 28 U.S.C. § 2253(c)(1); *see also Miller–El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); *Contino v. United States*, 535 F.3d 124, 127 (2d Cir.2 008).  Petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253.  The Clerk of Court is directed to close the case.

**SO ORDERED**.

                                          /s/
                                         Sandra J. Feuerstein
                                         United States District Judge

Dated: Central Islip, New York
       November 15, 2019